## Zaleski, Appellant, *v.* Kilgore.

Argued April 23, 1962. Before BELL, C. J., MUS-
MANNO, JONES, COHEN, EAGEN and O'BRIEN, JJ.

*H. Reginald Belden,* with him *Louis E. Sensenich,*
and *Daniel R. Edwards,* for appellants.

*A. C. Scales,* Special Counsel, with him *P. K. Jones,*
for county commissioners and county election board,
appellees.

OPINION BY MR. JUSTICE COHEN, May 21, 1962:

Plaintiffs-appellants, qualified electors of three com-
munities in Westmoreland County, appeal from the de-
cree of the lower court dismissing their complaint in
equity wherein they sought a preliminary injunction to
restrain the county commissioners, constituting the
county election board, from substituting paper ballots
for voting machines in the 1962 primary election.

Pursuant to the authorization contained in the Elec-
tion Code of 1937, June 3, P. L. 1333, §1102, 25 P.S.
§3002, the voters of New Kensington, in 1953; of Ar-
nold, in 1954; and of Lower Burrell, in 1956, adopted

by referenda the use of voting machines. Since the time of their purchase by the county commissioners and approval by the secretary of the Commonwealth, voting machines have been used in all primary and general elections within these communities. The qualified electors of said municipalities have not voted to discontinue the use of the machines.

In early 1962, the county commissioners, acting as the county board of election, decided that paper ballots were to be used in the forthcoming primary election. The ostensible reason for the commissioners' action was to "eliminate the confusion resulting from write-in candidates on the voting machines at primary elections. . . ." Notwithstanding widespread protests from electors in the affected communities, the commissioners ordered ballots printed for the primary. This class action followed.

As long ago as *Davidowitz v. Philadelphia County,* 324 Pa. 17, 187 Atl. 585 (1936), this court said in reference to voting machines: "These machines expedite the count, are helpful in reducing the possibility of election frauds, and their employment should be encouraged. They have been installed in the various counties at great expense and by vote of a majority of the electors thereof. A court, therefore, should not restrain their use unless a legislative or constitutional provision is clearly violated."

The legislature did foresee that certain situations might arise where voting machines could not be used in an election and provided in the Act of 1937, June 3, P. L. 1333, §1116, 25 PS §3016 that: "If a method of election for any candidates or offices is prescribed by law, in which the use of voting machines is not possible or practicable, or in case, at any election, the number of candidates nominated or seeking nomination for any office renders the use of voting machines for such office at such election impracticable, or *if, for any other*

*reason, at any election the use of voting machines is not possible or practicable, the county election board may arrange to have the voting for such or all offices conducted by paper ballots. . . ."* (Emphasis supplied).

We agree with appellees that the county commissioners must exercise their own discretion in determining whether the use of the voting machine is possible or practicable in a given situation. As we said in *Davidowitz,* "Only when bad faith, abuse of discretion, fraud or violation of the law appears, may courts intervene." (324 Pa. at 29).

Having studied the record, briefs and notes of testimony and having heard the arguments of counsel, we are convinced that the county commissioners, acting as an election board, abused their discretion when they decided to substitute paper ballots for the properly authorized voting machines in the 1962 primary election.

While there might be a certain amount of inconvenience to certain voters in utilizing the write-in slots on voting machines, and although there might be some difficulty among certain of the voters in distinguishing between male and female candidates for party committee posts, nevertheless, none of the objections to the use of voting machines are so material as to merit a discontinuance of their use when the overall benefits to be derived from such use are considered.

The legislature, in the Act of 1937, §1116, 25 PS §3016, determined under what conditions the use of the voting machine may be discontinued once they have been approved by the electorate. The board of county commissioners, acting as the county election board, is bound by this legislative expression and can substitute paper ballots for the voting machines only upon a clear showing that their use is not possible or practicable.

Under the circumstances in this case, therefore, the action of the lower court in dismissing appellants' complaint and sustaining the action of the county commis-

sioners was improper. Accordingly, we have reversed the decree of the court below and have entered the following order:

AND Now, to wit, 24th day of April, 1962, the decree of the court below dismissing the complaint in equity is reversed and record is remanded to the court below for the entry of an appropriate decree (a) revoking the action of the County Commissioners of Westmoreland County of February 23, 1962, acting as the County Board of Elections, ordering paper ballots to be substituted for voting machines in the primary election to be held May 15, 1962; and further, (b) directing that the primary election to be held on May 15, 1962 be conducted by the use of voting machines in all the election districts of Westmoreland County where voting machines have been approved for use in accordance with law.

Decree reversed. Costs on appellees.